```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------

EDIN E. MEMISEVICH,

                            Plaintiff,

        -v-                                        5:03-CV-1348

ST. ELIZABETH'S MEDICAL CENTER,

                            Defendant.

---------------------------------

APPEARANCES:                                OF COUNSEL:

EDIN E. MEMISEVICH
Plaintiff, pro se
15 Russell Avenue
Yorkville, NY 13495

SMITH, SOVIK, KENDRICK & SUGNET P.C.        GABRIELLE M. HOPE, ESQ.
Attorneys for Defendant
250 South Clinton Street
Suite 600
Syracuse, NY 13202-1252

DAVID N. HURD
United States District Judge
```

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Edin E. Memisevich ("plaintiff") commenced this action pursuant to 42 U.S.C. § 2000e, ("Title VII"), and New York Executive Law § 296 ("NYSHRL"). Plaintiff, a Bosnian male, alleges employment discrimination on the basis of his sex and national origin. Defendant St. Elizabeth's Medical Center ("St. Elizabeth's," "defendant" or "hospital") moves for summary judgment pursuant to Fed. R. Civ. P. 56, seeking to dismiss plaintiff's claims as

procedurally barred and substantively insufficient. Plaintiff opposes the motion. The motion was considered on the papers.

## II. FACTS

According to the record, St. Elizabeth's Medical Center is an equal opportunity employer which maintains a strict anti-discrimination policy. The hospital's only considerations for the employment and retention of registered nurses ("RN") are educational and licensing requirements, proper performance of duties, and providing excellent patient care. All nurses employed at St. Elizabeth's are members of the New York State Nurses Association.

Pursuant to hospital policy and the nurses' union's collective bargaining agreement with the hospital, a nurse who is not a full-time employee is on probation for the first six months of employment.[1] The probationary policy dictates that "performance below standards or expectations may result in termination at any point during or upon completion of probation." (Docket No. 19, Defendant's Statement of Material Facts ("DSMF") at 7 ¶ 40.) Further, only non-probationary employees receive formal, progressive disciplinary measures prior to termination. Probationary employees can be terminated during the probationary period with or without notice. (DSMF at 8 ¶ 43).

Plaintiff graduated from St. Elizabeth's College of Nursing and was hired as a pending registered nurse ("RN") at the hospital on the oncology floor in July 2000. Angela Rubino, RN, ("Rubino") was the Clinical Coordinator on the oncology floor and plaintiff's supervisor. Judy Hobaica, Nurse Manager ("Hobaica"), was Rubino's supervisor. Plaintiff

---

[1] Defendant has not provided copies of the policy, but plaintiff has not challenged defendant's rendition of the policy either.

worked for three months in this capacity until he failed his nursing boards, which are required to practice as an RN.  Plaintiff declined St. Elizabeth's offer to continue to work as a nursing assistant until such time as he passed the boards.

While plaintiff was unemployed, he had an argument with Patricia Burns, RN ("Burns"), a charge nurse at the hospital.[2]  Burns lived in an apartment below plaintiff's.  The argument involved a discussion over the volume of plaintiff's television, during which Burns stated, "Why don't you go back to where you came from."  (DSMF at 3 ¶ 15.)  Stephen Nyanjong, RN, a Kenyan National, also testified that he overheard Burns once say, "Bosnian men have no respect for women."  However, plaintiff admitted that he never had a dispute with Burns while working at the hospital.  (DSMF at 4 ¶ 18).  Plaintiff also admitted that Burns did not discriminate against him at work.  (DSMF at 4 ¶ 19).

In August 2001, Memisevich passed his nursing boards and St. Elizabeth's Clinical Coordinator Leslie McNeil, RN ("McNeil") re-hired him as a part-time staff nurse in the medical/surgical unit.[3]  Thus, plaintiff joined the St. Elizabeth's staff for the second time. While employed as a staff nurse, he was involved in two disputes with co-workers in the unit.

The first incident involved a dispute with Stephanie Bouck, RN ("Bouck"), a female American charge/staff nurse in the medical/surgical unit who sometimes worked with plaintiff. Bouck and other nurses, including plaintiff, used Medical Administration Records ("MAR") to record their patients' medical status on a daily basis.  These were kept in patients' rooms. When Bouck checked plaintiff's recording of his patients' MARs at the beginning of her shift,

---

[2] Charge nurses have no responsibility for the supervision, management, or discipline of the nursing staff.

[3] As a part-time employee, plaintiff was subject to defendant's probationary policy.

- 3 -

plaintiff became annoyed. Plaintiff testified that while "another male" nurse may not mind Bouck checking his MARs, it bothered him.[4] The second incident involved a dispute with Rochelle Ellis ("Ellis"), a female African American nursing assistant in the medical/surgical unit. Ellis admits that she once refused to help plaintiff with a patient when he requested help and "cussed out" plaintiff because of the manner in which he demanded her attention.[5] (DSMF at 5 ¶ 28).

While plaintiff alleges these two incidents of discriminatory treatment, the defendant offers reports of multiple clinical errors by plaintiff. These errors involved basic nursing skills that were covered during orientation. (DSMF at 6 ¶ 35). The errors reported include: (1) plaintiff called the wrong physician regarding a patient's condition; (2) plaintiff administered the wrong medication; (3) plaintiff told a nurse with fourteen years experience that she did not know her job; (4) plaintiff violated physician's orders by giving water to a ninety-three-year-old patient with aspiration problems; (5) plaintiff failed to identify a skin abnormality; (6) plaintiff relayed incorrect information regarding patient's urine output; and (7) plaintiff gave patient a dirty glass. McNeil; charge nurse Tom Groves, RN; and Sharon Constantine, RN informed Nurse Manager Hobaica of these reported clinical errors.

Two of these errors involved violations of St. Elizabeth's hospital policies. Plaintiff's failure to execute a physician's order by giving water to the ninety-three-year-

---

[4] Bouck testified that it has always been her practice to check the MARs for every patient of hers on the floor when she begins her shift.

[5] Bouck also testified that she had a hard time getting help from nursing assistants when they were busy doing something else. Further, John Fonner, RN, testified that plaintiff was not treated any differently than other new nurses to the unit. Moreover, McNeil disciplined Ellis and warned her that she could not refuse to help any nurse.

old patient with aspiration problems and plaintiff's leaving an isolation tray on the floor of a patient's room with contents presenting a biohazard are grounds for termination. (DSMF at 6-7 ¶ 35-36).  However, it is plaintiff's position that there is no supporting evidence for the reported clinical errors.  Plaintiff points out that he never missed a day of work during his probationary employment, he provided excellent patient care, and he never harmed any patients.

These patient care issues were discussed during a meeting between Robert Scholefield, Vice President of Nursing, Hobaica, and Clinical Coordinator McNeil.  The discussion ended in a decision to terminate plaintiff on December 20, 2001.  St. Elizabeth's stated reason for its termination decision was plaintiff's performance issues during his probationary period.  (DSMF at 7 ¶ 39).  Following his termination, plaintiff filed an initial complaint with the New York State Division of Human Rights.  The complaint was dismissed after determining that there was no probable cause that defendant had engaged in the unlawful discriminatory practices alleged by plaintiff.  Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of his termination.  The EEOC dismissed plaintiff's charge and issued Right to Sue letter dated August 8, 2003.[6]

Pursuant to 42 U.S.C. § 2000e-5(f), plaintiff had ninety days from reception of the EEOC Right to Sue letter to file a complaint with the district court, which would have been November 8, 2003.  The record indicates that plaintiff filed his complaint in forma pauperis on November 6, 2003.  Plaintiff was issued an order directing compliance on November 24, 2003, for failure to file an original signature page with the complaint.  Plaintiff had forty-five

---

[6] Defendant initially contested this fact in its Memorandum of Law but acknowledged plaintiff's receipt of the EEOC Right to Sue letter in its Reply Memorandum.

days from the date the Order was filed by which to comply, or by January 8, 2004. Plaintiff filed his original signature page on December 29, 2003.[7]

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); Project Release v. Provost, 722 F.2d 960, 968 (2d Cir. 1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue of fact for trial." Fed. R. Civ. P. 56; Liberty Lobby Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus.

---

[7] An order directing compliance was issued to plaintiff on January 6, 2004, to pay a filing fee by February 5, 2004. Compliance was required in order to continue with review of his complaint. Plaintiff paid the filing fee on January 22, 2004.

Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the non-movant. Liberty Lobby, Inc., 477 U.S. at 248-249, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  Thus, summary judgment is proper where there is "little or no evidence . . . in support of the non-moving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-1224 (2d Cir. 1994) (citations omitted).

### B. Procedural Bar

St. Elizabeth's moves for summary judgment to dismiss plaintiff's claims as procedurally barred because while plaintiff filed a complaint without the required signature page within the ninety-day limitations period, the signature page, and thus the completed complaint, was not filed until after the ninety-day rule limitations period had ended.  Here, plaintiff's late submission of a signature page to complete the filing of his original complaint is not enough to bar plaintiff's action, and therefore defendant's motion for summary judgment on this issue will be denied.

Under Fed. R. Civ. P. 11(a) ("Rule 11"), "an unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Fed. R. Civ. P. 11.  Further, it has been recognized that "the dismissal of a pro se pleading for failure to sign is inappropriate due to the great flexibility accorded a pro se litigant, as opposed to a pleading drafted by an attorney." Dean v. Westchester County P.R.C., 309 F. Supp. 2d 587, 596 (S.D.N.Y. 2004) (citing Montes v. Scully, No. 90-CV-1078, 1993 WL 372266, at *3 (E.D.N.Y. Sept. 1, 1993)) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972)).  It is also noted that the Second Circuit would apply equitable tolling to Title VII time limits at issue in this case.  Johnson v. Al Tech Specialties Steel Corp., 731

F.2d 143 (2d Cir. 1984). Since the ninety-day rule of 42 U.S.C. § 2000e-5(f) is a "related Title VII provision," the district courts must treat the ninety-day rule as a limitations period subject to equitable tolling. Id. (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398, 102 S. Ct. 1127 (1982) (due to the remedial purpose of Title VII, the filing period is not a jurisdictional prerequisite to filing a Title VII suit but subject to tolling when equity requires)).

In this case, plaintiff complied with the standard set forth in Rule 11(a) for correcting an omitted signature on the complaint. Specifically, plaintiff was issued a Right to Sue letter from the EEOC on August 8, 2003. He then filed his complaint pro se on November 6, 2003, two days before the deadline. However, his complaint was without the required signature page. Though Rule 11(a) requires that every pleading be signed, plaintiff promptly corrected his complaint in accordance with the rule. Specifically, he filed an original signature page on December 29, 2003, within the forty-five day time-frame allotted to him by court order.[8] This prompt correction negates what otherwise would require a striking of his complaint in its entirety as time-barred. Therefore, the ninety-day limitations period for timely filing of plaintiff's complaint is tolled, and defendant's motion for summary judgment to dismiss the plaintiff's complaint as time-barred will be denied.

### C. Disparate Treatment Claims

Memisevich brings claims of disparate treatment pursuant to both Title VII and the NYSHRL. Both are analyzed under the same framework as a discrimination claim brought under Title VII. Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001). Accordingly, the following discussion addresses both claims.

---

[8] Plaintiff was notified of the omission on November 24, 2003, from which date the plaintiff had forty-five days to submit his signature - by January 8, 2004.

Plaintiff brings claims of disparate treatment on the basis of both sex and national origin under Title VII. He claims he was terminated on account of being a Bosnian male. When analyzing a case of discriminatory termination, the burden-shifting analysis of McDonnell Douglas governs. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 1824-1825 (1973). This analysis consists of three parts. First, to bring an actionable Title VII claim, plaintiff must establish a prima facie case of discrimination. Id. at 802, 93 S. Ct. at 1824; Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 63 (2d Cir. 1997). Second, if the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer, who must offer a legitimate, nondiscriminatory reason for its actions.[9] Shumway, 118 F.3d at 63. Lastly, if the defendant successfully articulates a reason for the adverse employment action, the burden shifts back to the plaintiff, whose ultimate burden is to prove that the proffered reason is only a pretext for discrimination.[10] Id. at 63. Here, plaintiff fails to satisfy his first burden of establishing a prima facie case of discrimination based on sex or national origin.

---

[9] As set forth infra, Memisevich has failed to establish a prima facie case. However, even if plaintiff had done so, St. Elizabeth's offered legitimate, nondiscriminatory reasons for its termination decision. The complaints about plaintiff's clinical errors were investigated and reasonably credited, which would have rebutted any presumption of discrimination. Further, plaintiff's disputes with co-workers are evident of personality conflicts, and it has been held that "the profound inability to get along with co-workers is legitimate, non-discriminatory reason for an employment decision." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985). Moreover, plaintiff was a probationary employee at the time of his termination and under defendant's policy could be terminated during the probationary period with or without notice.

[10] Pretext does not require analysis in this case. Plaintiff offers no additional evidence to consider beyond the three incidents of discrimination that he alleges as part of his prima facie case. Plaintiff asserts that he never missed a day of work, never harmed any patients, and provided excellent patient care. However, even if these assertions are taken as true, such conclusory allegations would be insufficient to satisfy the burden of demonstrating pretext.

### 1. Prima Facie Case

A prima facie case of discrimination is established by showing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination.  McDonnell Douglas, 411 U.S. at 792; Shumway, 118 F.3d at 63.  "While the plaintiff's burden of proof at this initial stage of a discrimination case is de minimus, the plaintiff must still provide some direct or circumstantial evidence to survive a motion for summary judgment."  Murray v. U.S. Dep't of Justice, FBI, 821 F. Supp. 94, 102 (E.D.N.Y 1993), aff'd, 14 F.3d 591 (2d Cir. 1993).

It is undisputed that plaintiff satisfied the first element of his prima facie case, that he is a member of a protected class because he is a Bosnian male in the nursing field.  However, plaintiff has not satisfied the second element, that he was qualified for his position.  It is also undisputed that plaintiff satisfied the third element, that he experienced an adverse employment action, because he was terminated from his position.  Plaintiff has also has not satisfied the fourth element by failing to provide evidence that gives rise to an inference of discrimination based on sex or national origin.

### a. Second Element: Qualified for the Position

"The term 'qualified' has been defined by the Second Circuit to mean 'criteria the employer has specified for the position.'"  Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997).  For plaintiff to show that he was qualified according to the employer's criteria, "plaintiff need not demonstrate that his performance was flawless, but only that he possesses the basic skills necessary for performance of the job."  De la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996) (citing Powell v. Syracuse Univ.,

580 F.2d 1150, 1155 (2d Cir. 1978). However, in determining whether plaintiff's demonstration of job performance is satisfactory, the ultimate inquiry is "whether an employee's performance meets his employer's legitimate expectations." Meiri, 759 F.2d at 995. In doing so, "a court in a Title VII employment discrimination suit may rely on the evaluations rendered by supervisors." Id.

In this case, St. Elizabeth's expectations for employee job performance are articulated in the employer's employment and retention policy. This policy dictates educational requirements, licensing requirements, and an excellent patient care standard that are required for the employment and retention of their nurses. Further, defendant maintains a probationary policy for all part-time employees during the first six months of employment. Employees that are of probationary status are subject to the possibility that performance below standards or expectations may result in termination during probation and further with or without notice.

Here, plaintiff fails to meet even the de minimus standard of demonstrating he was qualified for the position of staff nurse at St. Elizabeth's. Plaintiff did not demonstrate evidence that he met his "employer's criteria" for a qualified staff nurse. See Thornley, 104 F.3d at 29. While it is undisputed that plaintiff passed the boards in 2001 and met the licensing and educational requirements of defendant, he failed to meet the excellent patient care standard in their employment and retention policy. Specifically, plaintiff committed multiple errors that did not meet this excellent patient care standard required for employee retention. In fact, he was reported as committing at least seven clinical errors that involved basic nursing skills. He even committed two of these errors that on their own would be

grounds for termination, as they involved explicit violations of hospital policy. These reports were investigated and reasonably credited by defendant.

Moreover, plaintiff does not dispute the legitimacy of the defendant's criteria that he was subject to St. Elizabeth's probationary policy. It is undisputed that he was employed as a part-time staff nurse under probationary status at the time he was terminated. Further, these reported errors occurred during the plaintiff's first three months of part-time employment, when he was subject to defendant's probationary policy as well as general criteria. Therefore, at the time of plaintiff's termination decision, defendant's policy permitted it to terminate plaintiff for performance below standards or expectations at any point during or upon completion of probation and further with or without notice.

Here, plaintiff fails to adduce sufficient evidence that he was not performing below standards or expectations of St. Elizabeth's that would warrant his termination for two reasons. First, plaintiff offers no evidence to rebut defendant's policies as not being legitimate or to rebut defendant's record of his deficient performance. Rather, plaintiff solely alleges that there is no evidence to support the errors. Second, the only allegations that plaintiff offers in support of his qualifications are that he never missed a day of work, did not harm any patients, and the conclusory allegation that he provided excellent patient care. Here, plaintiff adduced facts that were irrelevant to supporting his claim. Further, the employer's evaluations must be relied on to determine whether plaintiff meets the defendant's legitimate expectations and criteria. While plaintiff's burden is de minimus, it is not inconsequential. Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 127 (2d Cir. 2004) (citing Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)). Plaintiff failed to meet

even this de minimus burden of demonstrating that he was qualified for his position as a staff nurse. Therefore, he has failed to satisfy the second element of a prima facie case.

### b. Fourth Element: Inference of Discrimination.

In a discriminatory discharge case, a plaintiff must demonstrate circumstances existing at the time of the termination that would "give rise to an inference" of discrimination. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994). A court's determination of whether the circumstances "give rise to an inference" of discrimination is a determination of "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational fact finder to infer a discriminatory motive." Id. at 38. In doing so, all factual inferences that could rationally be drawn must be resolved in favor of the party against whom summary judgment is sought. Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000). One recognized method of raising an inference of discrimination is a showing of disparate treatment, "that the employer treated plaintiff 'less favorably than a similarly situated employee in all material respects outside his protected group.'" Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).

For example, in Mandell, plaintiff proffered evidence that demonstrated circumstances giving rise to an inference of religious discrimination of a police officer. Id. at 378. There, plaintiff offered three categories of evidence: discriminatory comments that were made during an official police function, the traditional discriminatory culture of the department, and the passing over of plaintiff on four occasions to promote Catholic officers instead. Id. at 378-379. The Court reasoned that the predominantly Christian department coupled with the officer's comments on their own were enough to demonstrate an inference of discrimination.

Id. at 379.  Therefore, the Court found that Mandell had established his burden of satisfying the fourth element.  Id.

In contrast, Memisevich fails to demonstrate an inference of discrimination in either his sex or national origin claims.

Memisevich offered no evidence of circumstances demonstrating sex discrimination.  Specifically, plaintiff alleged one comment and two discussions with co-workers.  Even viewing these facts in a view most favorable to plaintiff, none of these incidents referenced plaintiff's sex.  Rather, the only inference of plaintiff's sex in the record was the comment made by plaintiff himself when he stated that while another male nurse may not mind Bouck checking his MARs, it bothered him.  Further, the only inference to be drawn from the two discussions with co-workers is the inability to get along, which is not recognized under Title VII.  Therefore, plaintiff offered no evidence by which a rational fact finder could find an inference of sex discrimination within the three incidents that plaintiff provided.

In addition to failing on his sex discrimination claim, Memisevich also failed to offer evidence of circumstances that give rise to an inference of national origin discrimination.  The only incident that references the plaintiff's national origin was Burns's comment to plaintiff that he should go back to where [he] came from.  However, this comment was made outside of work, during the time that plaintiff was not even employed by St. Elizabeth's.  The comment regarded a neighbor dispute over plaintiff's television volume.  Further, the record states that Burns did not discriminate against him at work and that he never had a dispute with Burns while at work.

The remaining two incidents that plaintiff alleges are that Bouck checked his MARs and Ellis refused to help him based on his national origin.  Assuming plaintiff's facts are true, these incidents merely reflect co-worker disputes within the work environment at St. Elizabeth's.  Further, plaintiff provides no allegations that St. Elizabeth's is traditionally discriminatory as discussed in Mandell.  Specifically, there are no allegations of other sexual or racial comments made to or about other nurses or that the defendant maintained a hiring policy that excluded minority groups.  No rational fact finder would determine that a discriminatory motive was involved in these incidents.  Absent evidence beyond the listed incidents, plaintiff did not satisfy the fourth element of his prima facie case because he failed to provide sufficient evidence that gives rise to an inference of national origin discrimination.  Therefore, plaintiff did not succeed in either of his sex or national origin discrimination claims.

### D. Hostile Work Environment Claim

The parties have interpreted the plaintiff's complaint to state a hostile work environment claim under Title VII.  To the extent that such a claim is made, the defendant moves for summary judgment to dismiss it.  Since plaintiff has failed to provide evidence that raises a triable issue of fact, defendant's motion will be granted.  While the complaint is non-specific as to whether the hostile environment claim is related to his sex or national origin, the same standard is applied to claims related to both.  Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999).

To establish a hostile environment claim that withstands a motion for summary judgment, plaintiff must show that the conduct complained of was "'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)

(quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986)). "There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather" the totality of the circumstances are examined in regards to the "nature, severity, and frequency." Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002) (citing Harris, 510 U.S. at 23, 114 S. Ct. at 371). However, a plaintiff "must prove more than a few isolated incidents," and "[c]asual comments, or accidental or sporadic conversation" are insufficient to constitute a hostile work environment. Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986); cf. Holtz v. Rockefeller & Co., 258 F.3d 62, 70, 75-76 (2d Cir. 2001) (finding a triable issue of fact when the frequency and duration of the sexually offensive conduct established a "pattern of comments" and "repeated efforts" by the defendant that occurred on a "daily basis," including "approximately ten or twenty" insinuating sexual remarks, all of which was "ongoing for months and months"). Further, it is not enough for plaintiff to subjectively perceive the environment to be abusive, rather plaintiff must prove the misconduct to be "severe or pervasive enough" to create an objectively hostile working environment. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 1003 (1998). While alleged comments may be rude or derogatory, Title VII is not a general civility code. See id., 118 S. Ct. at 1002-03.

Here, the three incidents alleged by plaintiff are neither severe nor pervasive enough to objectively alter the conditions of employment. The first incident - Burns' comment made outside of work while plaintiff was not employed by defendant, the second incident - Bouck's checking plaintiff's MARs which annoyed plaintiff, and the third incident - when Ellis refused to help plaintiff when he requested help and cussed out plaintiff, when considered individually or collectively do not meet the standard of conduct necessary to create a triable

issue of fact. Therefore, to the extent that plaintiff set forth a hostile environment claim, it will be dismissed.

## IV. **CONCLUSION**

Plaintiff's complaint is not procedurally barred, therefore defendant's motion for summary judgment on this ground will be denied. However, plaintiff has failed to demonstrate a prima facie case of discrimination based on sex or national origin, and therefore both of his disparate treatment claims will be dismissed. Likewise, plaintiff's state law claims brought under the NYSHRL, and analyzed under the same framework as plaintiff's Title VII claims, will be dismissed. Finally, plaintiff has also failed to demonstrate a hostile work environment claim under Title VII.

Accordingly, it is

ORDERED that:

1. Defendant St. Elizabeth's Medical Center's motion to dismiss the complaint as procedurally barred is DENIED;

2. Defendant St. Elizabeth's Medical Center's motion for summary judgment is otherwise GRANTED; and

3. Plaintiff Edin Memisevich's complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk is directed to enter judgment accordingly.

Dated: August 9, 2006
Utica, New York

United States District Judge